BOND, ET AL. v. STATE EX REL. WILSON, ATTY. GEN., ET AL.

(No. 1760; Nov. 21, 1932; 16 Pac. (2d) 53)

For the plaintiff in error there was a brief by *Corthell, McCollough and Corthell,* of Laramie, Wyoming, and oral argument by *Mr. N. E. Corthell.*

136

138

For defendants in error there was a brief by *James A. Greenwood*, Attorney General, *Richard J. Jackson*, Deputy Attorney General, and *George W. Ferguson*, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by *Mr. Greenwood*.

KIMBALL, Chief Justice.

This action was brought for the purpose of deciding the status of property acquired by the state of Wyoming under the will of John E. Higgins who died in June, 1926. The will is an informal writing evidently prepared by the testator himself. Its material provisions are quoted:

"I hereby will and bequeath to the State of Wyoming all of my property both personal and real.

"From the income I want the following relatives to be beneficiaries:

[The beneficiaries are Harry Devine, Jr., and six others, each to receive annually $1000. As to Harry Devine, Jr., it is provided that should he lead a discreditable life his annuity shall "revert to the estate."]

"The above and all other property real and personal to belong to the State.

"It is my wish that the State create a trust whose life shall be not less than 50 years, for the administration of this property, at the end of the 50 years to distribute the property to the best interest of the State, or to hold it intact as the best judgment of the proper authorities of the State may dictate."

The probate of the will was contested. In March and April, 1928, agreements were entered into which resulted in the withdrawal of the contest and the settlement by payment of lump sums in satisfaction of all annuities mentioned in the will except that due Harry Devine, Jr. These agreements were approved by the court and the will admitted to probate in May, 1928. The estate was thereafter duly administered and distributed. By the decree of distribution, made November 7, 1929, it was provided:

"That Harry Devine, Jr., one of the legatees named in the will of said testator be, and he is hereby, awarded the sum of $1000 per year for the period of 50 years from the death of said testator with the understanding, however, that said annuities shall cease upon the death of said legatee and it is also hereby decreed that said annuity shall cease if the said legatee shall at any time during said period lead a discreditable life, which annuity shall be paid by the state of Wyoming to said legatee during said period of time, all in accordance with the testator's wishes as set forth in his last will."

The decree then provides that the whole of the testator's estate is "vested by full and absolute title" in the State of Wyoming.

The plaintiffs are the State on the relation of the Attorney General, and State officers, who claim that the property in question becomes a part of the perpetual common school fund by virtue of provisions of the constitution and statutes presently to be noticed. The defendants are the members of the Board of Trustees of the State University

who claim that the property is to be used for the support of the Higgins Memorial Foundation established by Chapter 157, Session Laws of 1929. The pleadings, setting forth these conflicting claims, asked a judgment declaring the purpose to which the property should be put, and incidentally what officers or boards should have the care and control of the property. The judgment of the District Court, sustaining the contentions of the plaintiffs, declared the property to be a part of the perpetual funds for school purposes; that the real property should be administered by the Board of Land Commissioners, and the personal property by the State Treasurer. The law of 1929, in so far as it attempts to affect the use and disposition of the property, is declared unconstitutional and void. The judgment also contains the declaration that the property real and personal so received is "subject to the provisions of the final discharge and decree in the matter of the estate of John E. Higgins, deceased, wherein it is provided that said property shall be subject to an annual payment to Harry Devine, Jr., of the sum of $1000." The defendants bring the case here by proceeding in error.

The people of the state by constitutional mandate have undertaken to prescribe the purposes for which property given to the state shall be used. As might be expected, we find both general and specific provisions requiring donated property to be used in accordance with the terms and conditions of the grant or gift. Article 18, entitled "Public Lands and Donations," declares by Section 2 that the proceeds from the sale and rental of all lands and other property donated, granted or received from any source "shall be inviolably appropriated and applied to the specific purposes specified in the original grant or gifts."

Article 7, entitled "Education," makes provision for a perpetual fund which (Section 7) "shall be exclusively applied to the support of free schools in every county in

the state." The property of the fund is described in Sections 2 and 3 of Article 7, as follows:

Sec. 2. "The following are declared to be perpetual funds for school purposes, of which the annual income only can be appropriated, to-wit: Such percentum as has been or may hereafter be granted by congress on the sale of lands in this state; all moneys arising from the sale or lease of sections number sixteen and thirty-six in each township in the state, and the lands selected or that may be selected in lieu thereof; the proceeds of all lands that have been or may hereafter be granted to this state, where by the terms and conditions of the grant, the same are not to be otherwise appropriated; the net proceeds of lands and other property and effects that may come to the state by escheat or forfeiture, or from unclaimed dividends or distributive shares of the estates of deceased persons; all moneys, stocks, bonds, lands and other property now belonging to the common school funds.

Sec. 3. "To the sources of revenue above mentioned shall be added all other grants, gifts and devises that have been or may hereafter be made to this state and not otherwise appropriated by the terms of the grant, gift or devise."

An act of the legislature of 1927 (R. S. 1931, Sec. 110-301) provides:

"That any and all grants, gifts and devises that have been or may be hereafter made to the State of Wyoming, and not otherwise appropriated by the terms of the grant, gift or devise shall be accepted as and be deemed trust funds in the care of the State; to be kept for the exclusive benefit of the public schools; the income from said trust funds to be disbursed as the 'common school land income fund' is disbursed."

It is at once seen that this statue is a general law intended as an acceptance of all grants, gifts and devises which, under Section 3 of Article 7 of the constitution must be added to the perpetual school fund, and as a legislative recognition of the constitutional direction as

to the use of the property as a part of the fund. The statute throws no light on the meaning of the constitutional provisions that must control our decision.

We shall first consider plaintiffs' contention that the property received by the state on final distribution of the Higgins estate is ''not otherwise appropriated'' by the terms of the gift or devise, and must, therefore, under Section 3 of Article 7, supra, be added to the school fund described in that article.

While Harry J. Devine, Jr., is not a party to this proceeding, it seems to us clear that his right, which is not questioned and should not be prejudiced by any judgment given herein, must be to some extent considered in determining the status of the property. He has the right to an annuity of $1000 which by the will is made a charge at least against the income of the property. By the decree of distribution the annuity is to be paid by the state of Wyoming. The court by this provision of the decree of distribution did not intend to establish a claim at large against the state to be paid from general state revenues, but evidently to make the annuity a charge against the whole of the property passing to the state under the will. The judgment in this case declares the property ''subject'' to this ''annual payment,'' and no one complains of that part of the judgment. It is easy to foresee that this beneficiary may be put to no inconsiderable embarrassment in collecting his annuity if the property against which it is made a charge is added to a fund which under cited constitutional provisions must be used exclusively for school purposes. We think the satisfaction of this charge is a specific purpose to which the property received by the state under the will should be first appropriated and applied under Section 2 of Article 18, supra, and that until the charge is satisfied the property cannot be considered as property ''not otherwise appropriated by

the terms of the  *  *  *  devise," within the meaning of Section 3 of Article 7.

We are not called on to decide what the state can or may do in appropriating and applying the property to the satisfaction of the annuity. In the will we find an expression of the testator's "wish that the state create a trust whose life shall be not less than 50 years for the administration of the property." This provision was evidently for the protection of the beneficiaries entitled to annuities. No other beneficiary of the trust is mentioned. It was probably the testator's thought that some of the annuities would not be fully satisfied for fifty years or more.

The plaintiffs say that this trust provision of the will cannot be considered as a limitation on the "absolute" title vested in the state by the decree of distribution. The decree says nothing about a trust and it is contended that we cannot look to the will for the purpose of discovering one. The decree, however, does establish a charge upon the property, and the constitution requires that the property be inviolably appropriated and applied for the purpose of satisfying the charge. Thus, without looking back of the decree of distribution, we find the expressed intention to create a relation between the State and Devine which need not be distinguished from a trust. This relation should be established or recognized by the State in order to carry out the mandate of the constitution.

The defendants contend that the disposition of the property in question is controlled by an act of the legislature of 1929 (ch. 157, Laws of 1929) which by Section 1 establishes the Higgins Memorial Foundation for "purposes of investigation and research in fields and problems affecting the welfare of the state of Wyoming, including agriculture, material resources, social, economic and educational problems," and "aid and improvement of public education, including elementary, secondary, collegiate and adult education and aid to students."

Section 2 of the act provides:

"The entire bequest to the State of Wyoming of gifts, grants and devises by the late John E. Higgins shall be given for the support of the foundation heretofore mentioned, and administered by the State of Wyoming as hereinafter provided. The State of Wyoming does hereby set aside any part of the real estate of the present John E. Higgins estate as deemed necessary for the permanent lands and buildings for the efficient operating or housing of this foundation. In order to preserve the entire bequest to the State of Wyoming of the gifts, grants and devises by the late John E. Higgins for future, as well as present, benefit to the Citizens of Wyoming, the State of Wyoming, through its legislative, executive or executive bodies, shall not use any of the principal of this foundation for the work of the foundation only as above stated. Only interest or current revenues accruing annually from this foundation shall be used in carrying out the work of the foundation."

Section 3 provides that the foundation shall be administered by the Board of Trustees of the State University.

If, on our consideration of plaintiffs' contention, the conclusions, as stated above, are correct, it necessarily follows that the property in question cannot be given for the support of the Higgins Memorial Foundation as contemplated by Section 2 of the act of 1929, without violation of the provisions of Section 2 of Article 18 of the constitution that requires the property to be appropriated and applied to the specific purpose of satisfying the established charge.

It is argued that the act of 1929 carries out the provision of the will that expresses the wish that a trust be created for the administration of the property for not less than 50 years. It is quite evident, however, that the established foundation bears no resemblance to the trust the testator had in mind. The act does not pretend to protect the annuity, nor limit the foundation to 50 years, nor contemplate further action in regard to the disposition of the property when the annuity has been satisfied.

The defendants disavow the intention of making any claim adverse to the rights of Devine. They say the act of 1929 only purports to operate upon the "bequest to the

state, which, of course, is the residuary property, after the annuity is satisfied.'' The same disavowal might be made by plaintiffs in reference to their claim on behalf of the school fund. What is claimed for the foundation by defendants and for the school fund by plaintiffs is clear enough. It is the whole of the property for the foundation or fund, and the right to use the income for the purposes for which the foundation or fund was established. The annuity has not been paid, and the residuary property is not now ascertainable. We do not think the act of 1929 was intended to appropriate only the so-called residuary property. It appropriates all the property, both principal and income, to a purpose not specified in the gift to the state.

When the charge in favor of Devine has been satisfied, the question may arise whether the property then remaining shall be added to the school fund or may be put to some other public use. See State ex rel. Owen v. Donald, 160 Wis. 21, 95, 102, 103, 151 N. W. 331, 355 357, 358, 361. The suggested question need not now be decided and may never arise.

We agree with the District Court in the declaration that Chapter 157 of the laws of 1929, in so far as it attempts to affect the use and disposition of the property in question, is unconstitutional and void. We agree also in the declaration that the property is subject to the payment of the mentioned annuity. We cannot agree that the property belongs to the common school fund, but hold that, until the annuity as a charge upon the property is satisfied, the State should administer the property, or its proceeds, and income as a trust fund to be appropriated and applied to the payment of the annuity.

We do not think we need decide what state officers or agents have the present right or duty to manage and control the property for the State. The defendants' asserted right in that regard is, of course, denied. No one else questions the right of those now in control. We may assume that the legislature in view of this decision, will provide for

148

the proper administration and application of the property as a trust fund either by state officers whose duties may be defined by law, or by some one who shall act under authority and direction of the proper court. In the absence of legislative action on the subject, it may be necessary for the executive officers in possession of the property to invoke the action of the courts for the purpose of executing the trust.

The case will be remanded to the District Court with direction to enter a modified judgment to conform to the views herein expressed.

BLUME and RINER, JJ., concur.